# IN THE COURT OF APPEALS OF IOWA

No. 20-0995
Filed October 7, 2020

**IN THE INTEREST OF O.P.,**
**Minor Child,**

**R.P., Father,**
    Appellant,

**J.V., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

The mother and father separately appeal the termination of their respective parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Blake D. Lubinus of Lubinus & Merrill, P.L.C. (until withdrawal), Des Moines, and Marshall Orsini, Des Moines for appellant father.

Cole J. Mayer of Macro & Kozlowski, L.L.P., West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Paul White of the Juvenile Public Defender's Office, Des Moines, attorney, and guardian ad litem for minor child.

Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

The mother and father separately appeal the termination of their respective parental rights to their child, O.P., born in July 2017. The juvenile court terminated each parent's rights under Iowa Code section 232.116(1)(h) (2020). On appeal, the mother maintains the State failed to prove the statutory ground for termination, the loss of her rights is not in the child's best interests, and two exceptions to termination are applicable and should preclude termination. Alternatively, she asks for a six-month extension to work on reunification. The father echoes the mother's claims and also challenges the court's March 2020 permanency order, claiming the court should have delayed permanency and given him a six-month extension rather than ordering the termination-of-parental-rights petition to be filed.

Our review of termination proceedings is de novo. *In re D.G.*, 704 N.W.2d 454, 457 (Iowa Ct. App. 2005). And our primary concern is the best interests of the child at issue. *Id.* Here we combine our analysis where the parents raise the same or similar claims, but we make our determination about each parent separately. *Id.* at 459 ("[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally.")

Each parent claims the State did not prove termination under section 232.116(1)(h). They concede the first three elements are met but challenge the fourth, which requires proof the child could not be returned to parental custody at the time of the termination hearing in July 2020. *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102");

*In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing").

Each parent contests the court's finding that their continued use of methamphetamine prevented O.P. from being safely returned to their care. The mother focuses her argument on the fact that she has been consistently involved in substance-abuse treatment. She argues that if she needed more or different treatment, it was up to the Iowa Department of Human Services (DHS) or the court to tell her so before the termination hearing. The father claims that his use of methamphetamine alone is not enough to show the child could not be safely returned to his care; he argues there must be a nexus shown between his continued substance abuse and threat of harm to the child. We are not persuaded by either of these arguments.

Both parents have a long history of methamphetamine use. The mother, who was thirty-four years old at the time of the termination hearing, testified she first used methamphetamine at age nineteen and then began using about monthly after that. She described her past use as a "recreational, every now and then thing" at parties. But from age twenty-seven to thirty, she used "once a week." Since she met the father around age thirty, she testified they used "very minimal," "maybe once a month." The mother maintained she did not have a substance-abuse problem, but she continued to test positive for methamphetamine despite DHS involvement with her family. The mother was also aware she needed to maintain sobriety so O.P. could be returned to her care. The father, who was forty-one at the time of the termination hearing, testified he also first tried methamphetamine in his late teens. He continued to use until age twenty-seven,

when his mother died from a methamphetamine overdose. After that, he stopped using methamphetamine for several years. He admitted he and the mother have been using together "once, twice a month maybe" since he met her at age thirty-eight. The father minimized the significance of their decision to continue using methamphetamine after the birth of their child, testifying, "I mean, it really wasn't like we were looking for it every day. We weren't selling pictures off the wall, selling TVs or robbing little old ladies at ATMs get a fix."

The mother's ongoing participation in substance-abuse counseling, while a positive thing, is not sufficient to establish that she can safely care for O.P. We acknowledge the counselor seems encouraged by the mother's progress, but the counselor does not independently drug test the mother and relies on the mother's self-reports about her sobriety. The mother continues to report to the counselor (and testified at the termination hearing) that after she completed an extended outpatient substance-abuse program in August 2019, she used methamphetamine only once—when she relapsed in October 2019. Yet, she has several drug tests positive for methamphetamine after her treatment program—testing positive in October and December 2019 and January and March 2020. The mother's general denials of ongoing use of methamphetamine lack credibility, and O.P. could not be safely returned to her care. *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (noting a child cannot be returned to the custody of the parent if doing so would expose the child to any harm amounting to a new child-in-need-of-assistance adjudication).

The father argues that his continuing use of methamphetamine does not mean O.P. cannot be returned to his care. The father cites *M.S.* in support of his

claim. 889 N.W.2d at 682. But that case required the State to establish a nexus between the parent's use of cannabis and an appreciable risk of adjudicatory harm. *Id.* Our case law distinguishes between use of cannabis and addictions to methamphetamine. *See, e.g.*, *In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the child[] in the parent's care."). And here, the case began with a founded child abuse report as to both parents after it was determined they were using methamphetamine in their home where O.P. resides. The father's continued use of methamphetamine and his failure to engage in substance-abuse treatment means O.P. cannot be safely returned to his care.

Second, each parent argues loss of their rights is not in O.P.'s best interests. *See* Iowa Code § 232.116(2). Each focuses on their strong relationship with O.P. and the parenting skills they exhibited during supervised visits. DHS had no concerns with the parents' ability to care for and supervise O.P. while sober. And the parents' visits with O.P. went well; they had activities planned and played together as a family. This was recognized as a strength of the family's in family safety, risk, and permanency reports. But O.P. had been out of his parents' care approximately fifteen months at the time of the termination hearing, and the parents continued to test positive for methamphetamine and downplay the harm their ongoing use played on themselves and their family.[1] Considering both O.P.'s

---

[1] DHS became involved with this family this time after the mother experienced cardiac arrest at her workplace—a daycare center—following a weekend where she and the father used methamphetamine multiple times. The mother had to have a defibrillator implanted, and she testified her doctor told her "[a]ny kind of

long-term and immediate needs, permanency is in O.P.'s best interests, and the parents are unable to provide that stability. *See In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests."); *see also In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) (concluding termination was appropriate under the best-interests analysis because "we cannot deprive a child of permanency after the State has proved a [statutory] ground for termination").

Third, both parents argue the juvenile court should have applied the exceptions to termination in Iowa Code section 232.116(3)(a) or (c) to save the parent-child relationships. The court may avoid termination if a relative has legal custody of the child, *see* Iowa Code § 232.116(3)(a), or if termination would be detrimental to the child because of the closeness of the parent-child relationship. *See id.* § 232.116(3)(c). After considering the "unique circumstances of [this] case and the best interests of" O.P., the juvenile court declined to apply an exception to save the parent-child relationships here. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citation omitted). We agree that the parents have not proved an exception should be applied in this case.

Next, the mother argues she should be given a six-month extension to work on reunification. *See* Iowa Code §§ 232.104(2)(b), .117(5). But we cannot say more time would allow the mother to resume caring for O.P. We do not believe the mother's claims that all but one of her positive drug tests are inaccurate. If the

---

smoking, cigarettes, marijuana, alcohol, is bad for my heart nowadays" though she continued to test positive for THC and admitted consuming alcohol.

mother cannot be honest with herself and her substance-abuse counselor about her use, she cannot get the help she needs to achieve sobriety. As the juvenile court found:

> Neither parent has honestly addressed their substance abuse nor mental health issues and both continue to use illegal substance and alcohol to this date. The parents show no insight into how their substance abuse has negatively affected their ability to parent [O.P.] They characterize their use as "recreational," yet neither can stop using despite the impact on [the mother's] own health, or the impact on their ability to regain custody of [O.P.].

Finally, the father challenges the juvenile court's permanency order. He challenges the court's instruction to the State to file a petition to terminate the father's rights. He contends that the court should have returned O.P. to his care or, alternatively, given him a six-month extension because he was making "reasonable progress" with the case plan. *See id.* § 232.104(1)(c). But the father was not making reasonable progress, and O.P. could not then be returned to his care. As of the March 31, 2020 permanency hearing, the father had just tested positive for methamphetamine again a few days earlier. He was not in substance-abuse treatment or mental-health treatment. And while the court did include in its order that the State should file the petition to terminate, the State had already done so a few days before the permanency hearing—following both parents' positive drug tests for methamphetamine. We find no error in the juvenile court's permanency order.

We affirm the termination of each parent's rights to O.P.

**AFFIRMED ON BOTH APPEALS.**